## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | **No. 1:20-cr-58-JL** |
| | ) | |
| **TYLER W. CADY** | ) | |

FILED - USDC -NH
2021 FEB 25 PH4:44

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(A) and (C) of the Federal Rules of Criminal Procedure, the United States of America by its attorneys, Scott W. Murray, United States Attorney for the District of New Hampshire, and Assistant U.S. Attorney John S. Davis, and the defendant, Tyler W. Cady, and the defendant's attorney, Simon Brown, Esquire, enter into the following Plea Agreement:

1. <u>The Plea and The Offenses</u>.

The defendant agrees to waive indictment by a Grand Jury and plead guilty to Counts One and Two of a Superseding Information. Count One charges him with Conspiracy to Distribute and to Possess With Intent to Distribute a Controlled Substance, specifically, 50 grams or more of Methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A)(viii). Count Two charges him with possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A).

In exchange for the defendant's guilty plea, the United States agrees to the sentencing stipulations identified in Section 6 of this agreement. In addition, the government will move to dismiss the pending Indictment against the defendant at sentencing.

2. <u>The Statute and Elements of the Offense</u>.

- 1 -

Regarding Count One, Title 21, United States Code, Section 846 provides that any person who conspires to commit an offense defined in section 841 "shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the . . . conspiracy." Further, Section 841(a)(1) provides that "it shall be unlawful for any person knowingly or intentionally" to "distribute" or to "possess with intent to . . . distribute" a "controlled substance." Title 21, United States Code, Section 841(b)(1)(A)(viii) provides that, in the case of a violation of Section 841(a)(1) involving "50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers," the offender "shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life."

The defendant understands that Count One has the following elements, each of which the United States would be required to prove beyond a reasonable doubt at trial:

First, that the agreement specified in the information, and not some other agreement or agreements, existed between at least two people to distribute or possess with intent to distribute a controlled substance;

Second, that the defendant willfully joined in that agreement; and

Third, that 50 grams or more of Methamphetamine was involved in the conspiracy.

*First Circuit Pattern Criminal Jury Instructions*, No. 4.18.371.

Regarding Count Two, Title 18, United States Code, Section 924(c) provides, in pertinent part, that it is unlawful for any person, "in furtherance" of "a drug trafficking crime for which the person may be prosecuted in a court of the United States," to "possess" a firearm.

The defendant understands that the offense has the following elements, each of which the United States would be required to prove beyond a reasonable doubt at trial:

- 2 -

First, the defendant committed the offense charged in Count 1; and

Second, the defendant knowingly possessed a firearm in furtherance of the commission of that offense.

*First Circuit Pattern Criminal Jury* Instructions, No. 4.18.924.

3. Offense Conduct.

The defendant stipulates and agrees that if this case proceeded to trial, the government would introduce evidence of the following facts, which would prove the elements of the offenses beyond a reasonable doubt:

On March 4, 2020, DEA agents met with a confidential source ("CS"), who indicated that N.J. had contacted the CS asking if the CS wanted methamphetamine. The CS indicated that he/she could meet with N.J. in the Pittsfield, New Hampshire, area. The CS indicated he/she could purchase four ounces of methamphetamine from N.J. and her supplier, defendant Tyler Cady, for $3900 dollars. After searching the CS and his/her vehicle, the agents provided the CS with $3900 in sham currency. The CS was then equipped with audio/video recording devices. The CS was to pick up N.J. in Pittsfield, New Hampshire, and then drive to Concord, New Hampshire, to meet with Cady for 4 ounces of crystal methamphetamine.

At approximately 3:50 pm on March 4, 2020, surveillance agents observed the CS arrive at the meeting location in Pittsfield. N.J. was seen entering the CS's vehicle. The vehicle (carrying the CS and N.J.) was surveilled to Silver Street in Dover, New Hampshire, arriving there at approximately 4:45 pm. At approximately 5:00 pm agents observed defendant Tyler Cady driving a small black compact vehicle pull beside the CS's undercover vehicle. At approximately 5:06 pm, agents observed N.J. get out of the undercover vehicle and go to the passenger side of Cady's vehicle. Cady had the passenger side window down, and Cady and

- 3 -

N.J. spoke. At this time agents observed Cady reach under the front seat of his vehicle and hand something black to N.J. who was standing at the right front passenger side of Cady's vehicle. At this point N.J. walked back over to the undercover vehicle and spoke with the CS, and showed the CS something. The CS had been told to give the arrest signal once he/she saw methamphetamine. The CS exited the undercover vehicle displaying the arrest signal. The CS then retrieved the sham buy money out of the trunk of his/her car.   N.J. returned to the passenger side of Cady's car with the CS. Cady was observed handing a clear baggie to N.J.   Agents then moved in to arrest N.J. and Cady.

At the time of Cady's arrest a clear plastic bag containing approximately four and a half ounces of methamphetamine was located on his lap. These drugs were subsequently tested at a DEA laboratory and were determined to be Methamphetamine Hydrochloride with a net weight of 111.2 grams and a purity of 100%. A search of Cady's person incident to arrest revealed approximately 7 grams of apparent fentanyl in his right front pocket, along with a large sum of currency on his person. The total amount of cash seized from Cady or his vehicle was $8213. Afterwards agents ran a trained K-9 (Gator) on Cady's vehicle, and Gator alerted on the vehicle, indicating the presence of narcotics. A subsequent search of the Cady's vehicle revealed an additional amount of apparent methamphetamine located in a sock in a knapsack that Cady claimed ownership of. These drugs were subsequently tested at a DEA laboratory and were determined to be Methamphetamine Hydrochloride with a net weight of 252.1 grams and a purity of 98%.

Also in the vehicle at the time of the search agents located a loaded sawed-off shotgun in the front passenger compartment, namely a Remington Model 870 Express Magnum 20 Gauge

Shotgun, serial # A133324U.   Also discovered were a Jennings Model J-22 .22 Caliber Pistol,

serial # obliterated, a scale and a money counter.   At the time of the search of Cady at the

Strafford County House of Corrections a .22 caliber round of ammunition was located on Cady's

person.

    4.  Penalties, Special Assessment and Restitution.

The defendant understands that the penalties for the offenses are:

A.      With respect to Count One, a maximum prison term of life and a mandatory minimum term of 10 years (21 U.S.C. § 841(b)(1)(A)(viii)), and with respect to Count Two, a mandatory term of not less than 5 years, which must be imposed consecutively to the sentence for Count One (18 U.S.C. §§ 924(c)(1)(A)(i) & (D)(ii));

B.      With respect to Count One, a maximum fine of $10 million (21 U.S.C. § 841(b)(1)(A)), and with respect to Count Two, a maximum fine of $250,000. (18 U.S.C. § 3571(b)(3));

C.      With respect to Counts One and Two, a term of supervised release of at least 5 years (21 U.S.C. § 841(b)(1)(A)). The defendant understands that the defendant's failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring the defendant to serve in prison all or part of the term of supervised release, with no credit for time already spent on supervised release; and

D.      A mandatory special assessment of $200, $100 for each count of conviction, at or before the time of sentencing (18 U.S.C. § 3013(a)(2)(A)).

In addition to the other penalties provided by law, the Court may order him to pay

restitution to the victim(s) of the offense (18 U.S.C. § 3663 or § 3663A).

    5.  Sentencing and Application of the Sentencing Guidelines.

The defendant understands that the Sentencing Reform Act of 1984 applies in this case

and that the Court is required to consider the United States Sentencing Guidelines as advisory

guidelines. The defendant further understands that he has no right to withdraw from this Plea

- 5 -

Agreement if the applicable advisory guideline range or his sentence is other than he anticipated.

The defendant also understands that the United States and the United States Probation Office shall:

A.    Advise the Court of any additional, relevant facts that are presently known or may subsequently come to their attention;

B.    Respond to questions from the Court;

C.    Correct any inaccuracies in the pre-sentence report; and

D.    Respond to any statements made by him or his counsel to a probation officer or to the Court.

The defendant understands that the United States and the Probation Office may address the Court with respect to an appropriate sentence to be imposed in this case.

The defendant acknowledges that any estimate of the probable sentence or the probable sentencing range under the advisory Sentencing Guidelines that he may have received from any source is only a prediction and not a promise as to the actual sentencing range under the advisory Sentencing Guidelines that the Court will adopt.

6. <u>Sentencing Stipulations and Agreements</u>.

Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the parties agree that a sentence of 198 months' imprisonment (16 and ½ years) is the appropriate disposition of this case.

The parties intend the above stipulation to be "binding" under Fed. R. Crim. P. 11(c)(1)(C). By using the word binding the parties mean that if the Court will not accept the plea agreement under Fed. R. Crim. P. 11(c)(3)(A), the plea agreement is null and void and the defendant will be allowed the opportunity to withdraw his guilty plea.

The United States and the defendant are free to make recommendations with respect to

- 6 -

the terms of imprisonment, fines, conditions of probation or supervised release, and any other penalties, requirements, and conditions of sentencing as each party may deem lawful and appropriate, unless such recommendations are inconsistent with the terms of this Plea Agreement.

7.   Acceptance of Responsibility.

The United States agrees that it will not oppose an appropriate reduction in the defendant's adjusted offense level, under the advisory Sentencing Guidelines, based upon the defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the offense. The United States, however, may oppose any adjustment for acceptance of responsibility if the defendant:

A.   Fails to admit a complete factual basis for the plea at the time he is sentenced or at any other time;

B.   Challenges the United States' offer of proof at any time after the plea is entered;

C.   Denies involvement in the offense;

D.   Gives conflicting statements about that involvement or is untruthful with the Court, the United States or the Probation Office;

E.   Fails to give complete and accurate information about his financial status to the Probation Office;

F.   Obstructs or attempts to obstruct justice, prior to sentencing;

G.   Has engaged in conduct prior to signing this Plea Agreement which reasonably could be viewed as obstruction or an attempt to obstruct justice, and has failed to fully disclose such conduct to the United States prior to signing this Plea Agreement;

H.   Fails to appear in court as required;

I.   After signing this Plea Agreement, engages in additional criminal conduct;

- 7 -

or

J.      Attempts to withdraw his guilty plea.

The defendant understands and agrees that he may not withdraw his guilty plea if, for any of the reasons listed above, the United States does not recommend that he receive a reduction in his sentence for acceptance of responsibility.

The defendant also understands and agrees that the Court is not required to reduce the offense level if it finds that he has not accepted responsibility.

If the defendant's offense level is sixteen or greater, and he has assisted the United States in the investigation or prosecution of his own misconduct by timely notifying the United States of his intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently, the United States will move, at or before sentencing, to decrease the defendant's base offense level by an additional one level pursuant to U.S.S.G. § 3E1.1(b).

8.  Waiver of Trial Rights and Consequences of Plea.

The defendant understands that he has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent him.   The defendant also understands that he has the right:

A.      To plead not guilty or to maintain that plea if it has already been made;

B.      To be tried by a jury and, at that trial, to the assistance of counsel;

C.      To confront and cross-examine witnesses;

D.      Not to be compelled to provide testimony that may incriminate him; and

E.      To compulsory process for the attendance of witnesses to testify in his defense.

- 8 -

The defendant understands and agrees that by pleading guilty he waives and gives up the foregoing rights and that upon the Court's acceptance of the his guilty plea, he will not be entitled to a trial.

The defendant understands that if he pleads guilty, the Court may ask him questions about the offense, and if he answers those questions falsely under oath, on the record, and in the presence of counsel, his answers will be used against him in a prosecution for perjury or making false statements.

9.   Acknowledgment of Guilt; Voluntariness of Plea.

The defendant understands and acknowledges that he:

A.   Is entering into this Plea Agreement and is pleading guilty freely and voluntarily because he is guilty;

B.   Is entering into this Plea Agreement without reliance upon any promise or benefit of any kind except as set forth in this Plea Agreement or revealed to the Court;

C.   Is entering into this Plea Agreement without threats, force, intimidation, or coercion;

D.   Understands the nature of the offense to which he is pleading guilty, including the penalties provided by law; and

E.   Is completely satisfied with the representation and advice received from his undersigned attorney.

10.   Scope of Agreement.

The defendant acknowledges and understands that this Plea Agreement binds only the undersigned parties and cannot bind any other non-party federal, state or local authority. The defendant also acknowledges that no representations have been made to him about any civil or administrative consequences that may result from his guilty plea. The defendant understands such matters are solely within the discretion of the specific non-party government agency

involved. The defendant further acknowledges that this Plea Agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving the defendant.

11. <u>Collateral Consequences</u>.

The defendant understands that as a consequence of his guilty plea he will be adjudicated guilty and may thereby be deprived of certain federal benefits and certain rights, such as the right to vote, to hold public office, to serve on a jury, or to possess firearms.

The defendant understands that, if he is not a citizen of the United States, his guilty plea to the charged offense will likely result in him being subject to immigration proceedings and removed from the United States by making him deportable, excludable, or inadmissible The defendant also understands that if he is a naturalized citizen, his guilty plea may result in ending his naturalization, which would likely subject him to immigration proceedings and possible removal from the United States. The defendant understands that the immigration consequences of this plea will be imposed in a separate proceeding before the immigration authorities. The defendant wants and agrees to plead guilty to the charged offense regardless of any immigration consequences of this plea, even if this plea will cause his removal from the United States. The defendant understands that he is bound by his guilty plea regardless of any immigration consequences of the plea. Accordingly, the defendant waives any and all challenges to his guilty plea and to his sentence based on any immigration consequences, and agrees not to seek to withdraw his guilty plea, or to file a direct appeal or any kind of collateral attack challenging his guilty plea, conviction, or sentence, based on any immigration consequences of his guilty plea.

12. <u>Forfeiture</u>

- 10 -

The defendant agrees to immediately and voluntarily forfeit to the United States his

interest, if any, in any and all assets subject to forfeiture, including the following:

$8213 in U.S. Currency;

Remington Model 870 Express Magnum 20 Gauge Shotgun, serial # A133324U;

Jennings Model J-22 .22 Caliber Pistol, serial # obliterated; and

Assorted Ammunition.

The defendant agrees and consents to the forfeiture of his interest in these assets pursuant

to any criminal, civil and/or administrative forfeiture action brought to forfeit these assets.

None of the forfeitures set forth in this section shall be deemed to satisfy or offset any

fine, restitution, cost of imprisonment, or other penalty imposed upon the defendant, nor shall the

forfeitures be used to offset the defendant's tax liability or any other debt owed by the defendant

to the United States.

The defendant agrees to waive all constitutional, statutory, and any other challenges in

any manner, including, without limitation, by direct appeal and/or habeas corpus, to any

forfeiture carried out in accordance with this Plea Agreement on any grounds, including the

following: (1) the forfeiture constitutes an excessive fine or punishment under the Eighth

Amendment to the U.S. Constitution; (2) failure to comply with any and all requirements of Fed.

R. Crim. P. 11(b)(1)(J) pertaining to the Court's advice at the change of plea hearing; and, (3)

failure to comply with any and all requirements of Federal Rules of Criminal Procedure 32.2 and

43(a) regarding notice of the forfeiture in the charging instrument and announcement of the

forfeiture at sentencing and incorporation of the forfeiture in the judgment.    The defendant

further acknowledges that he understands that the forfeiture of assets is part of the sentence that

may be imposed in this case.

The defendant waives and releases any and all claims he may have to any property seized by the United States, or any state or local law enforcement agency and turned over to the United States, during the investigation and prosecution of this case, whether forfeited or not.   The defendant agrees to hold the United States, its agents, and employees, and any state or local law enforcement agency participating in the investigation and prosecution of this case, harmless from any claims whatsoever in connection with the seizure and forfeiture, as well as the seizure, detention and return of any property in connection with the investigation and prosecution of this case.

The defendant acknowledges that the properties to be forfeited under this section are subject to forfeiture as property facilitating or involved in illegal conduct.

13.   Satisfaction of Federal Criminal Liability; Breach.

The defendant's guilty plea, if accepted by the Court, will satisfy his federal criminal liability in the District of New Hampshire arising from his participation in the conduct that forms the basis of the Information in this case. The defendant understands that if, before sentencing, he violates any term or condition of this Plea Agreement, engages in any criminal activity, or fails to appear for sentencing, the United States may consider such conduct to be a breach of the Plea Agreement and may withdraw therefrom.

14.   Waivers.

A.   Appeal.

The defendant understands that he has the right to challenge his guilty plea and/or sentence on direct appeal. By entering into this Plea Agreement the defendant knowingly and

voluntarily waives his right to challenge on direct appeal:

    1.     His guilty plea and any other aspect of his conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues, or claims challenging the constitutionality of the statute of conviction; and

    2.     The sentence imposed by the Court if it is consistent with or lower than the stipulated sentence specified in Section 6 of this agreement.

The defendant's waiver of his rights does not operate to waive an appeal based upon new legal principles enunciated in Supreme Court or First Circuit case law after the date of this Plea Agreement that have retroactive effect; or on the ground of ineffective assistance of counsel.

    B.   Collateral Review

The defendant understands that he may have the right to challenge his guilty plea and/or sentence on collateral review, e.g., a motion pursuant to 28 U.S.C. §§ 2241 or 2255. By entering into this Plea Agreement, the defendant knowingly and voluntarily waives his right to collaterally challenge:

    1.     His guilty plea, except as provided below, and any other aspect of his conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues, or claims challenging the constitutionality of the statute of conviction; and

    2.     The sentence imposed by the Court if it is consistent with or lower than the stipulated sentence specified in Section 6 of this agreement.

The defendant's waiver of his right to collateral review does not operate to waive a collateral challenge to his guilty plea on the ground that it was involuntary or unknowing, or on the ground of ineffective assistance of counsel. The defendant's waiver of his right to collateral review also does not operate to waive a collateral challenge based on new legal principles enunciated by in Supreme Court or First Circuit case law decided after the date of this Plea

- 13 -

Agreement that have retroactive effect.

C. Freedom of Information and Privacy Acts

The defendant hereby waives all rights, whether asserted directly or through a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of the case(s) underlying this Plea Agreement, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

D. Appeal by the Government

Nothing in this Plea Agreement shall operate to waive the rights or obligations of the Government pursuant 18 U.S.C. § 3742(b) to pursue an appeal as authorized by law.

15. No Other Promises.

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement or revealed to the Court, and none will be entered into unless set forth in writing, signed by all parties, and submitted to the Court.

16. Final Binding Agreement.

None of the terms of this Plea Agreement shall be binding on the United States until this Plea Agreement is signed by the defendant and the defendant's attorney and until it is signed by the United States Attorney for the District of New Hampshire, or an Assistant United States Attorney.

17. Agreement Provisions Not Severable.

The United States and the defendant understand and agree that if any provision of this Plea Agreement is deemed invalid or unenforceable, then the entire Plea Agreement is null and

void and no part of it may be enforced.

SCOTT W. MURRAY
United States Attorney

Date: 2/24/21

By:

John S. Davis
Assistant United States Attorney
53 Pleasant St., 4th Floor
Concord, NH 03301
John.Davis8@usdoj.gov

The defendant, Tyler W. Cady, certifies that he has read this Plea Agreement and that he
fully understands and accepts its terms.

Date: 2/10/2021

Tyler W. Cady, Defendant

I have read and explained this Plea Agreement to the defendant, and he has advised me
that he understands and accepts its terms.

Date: 02/24/2021

Simon Brown, Esquire
Attorney for Tyler W. Cady

- 15 -